# Uhler *versus* The Farmers' National Bank of Bucks County.

1. The endorsement of a payee and first endorser is a primary, though conditional promise to pay the note to the holder.

2. The demand and notice necessary to make the undertaking absolute, were only acts to be done under the promise.

3. Uhler was payee and endorser of a note drawn by Ferguson and discounted by a bank who failed to give due notice of dishonor.  Uhler promised to pay, if the bank would wait for a dividend from Ferguson's estate, and if being under protest should not bar his having accommodations.  This did not change the character of Uhler's direct responsibility on the note.

4. It continued for the same debt to the same creditor and for a new consideration from the creditor to him.

5. The waiver of the bank rule to refuse accommodations to persons on protested paper, is a benefit to a party on a protested note.

6. The promise of a relieved endorser to pay is not within the Statute of Frauds, as being the debt of another.

7. Where the promise is to pay the promissor's own debt, although that of a third person be incidentally guarantied, the promise need not be in writing.

8. In strictness, a waiver of protest is an agreement made before or at the time of maturity of the note.

9. A promise of an endorser after maturity to pay notwithstanding there had been no protest, is a new undertaking.

10. The endorsement is a transfer of title to the note, and is a promise to pay on the failure of the drawer for a consideration proceeding to him from the subsequent endorser or to the drawer at his request, evidenced by the endorsement.

11. The promise of the endorser to continue his liability, is not a new and independent promise within the Statute of Frauds.

12. Maule *v.* Bucknell, 14 Wright 39, remarked on.

March 8th 1870.   Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.   READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bucks county* : No. 334, to January Term 1870.

The Farmers' National Bank of Bucks County, on the 12th of March 1868, brought an action of assumpsit against Michael Uhler.

The cause of action was a promise by the defendant to pay a note which he had endorsed, which had been discounted by the plaintiff, and had been dishonored, but of the non-payment of which the defendant had not been notified in time.   The note was as follows :—

[Uhler *v.* Farmers' National Bank.]

$1000.                                        Philada., Oct. 26th 1864.

Sixty days after date, I promise to pay to the order of M. Uhler, one thousand dollars, without defalcation, for value received.

                                          W. F. FERGUSON.

Payable Third }                MICHAEL UHLER,
National Bank. }  (Endorsed)   RICHARDS & YOUNG.

Ferguson, the drawer, had made an assignment for the benefit of creditors and was insolvent.

The evidence for the plaintiff was that the defendant having been called upon by C. N. Taylor, one of their officers, agreed that if the bank would wait until the estate of Ferguson should be settled, and would take their dividend from his estate, and would not consider the fact that the defendant was under protest, a bar to his future accommodation, he would waive all irregularity in the protest, and hold himself bound to pay the note, the same as if it had been duly protested, and would make up whatever deficiency there might be from Ferguson's estate. The defendant then knew that he was discharged by reason of the insufficient protest. Notes were subsequently discounted for the defendant by the plaintiff, and never thrown out on account of the other note being under protest. There was evidence of the same agreement having been made with Richards and Young, and the defendants together. On the 18th of July 1867, the plaintiff received a dividend of $33.71 on the note from the estate of Ferguson.

The defendant testified that Taylor charged him with having deceived the plaintiff as to Ferguson's ability, threatened to prosecute the defendant for fraud; that a short time afterwards he called on the defendant, and said " we had better compromise this thing. I told him we would pay the note on certain conditions: if they would wait and strike a dividend, would pay the note, if the bank would discount our paper as it had done before up to time estate was settled. He agreed they would do that. Mr. Young was by. When I spoke of 'we,' I referred to Richards and Young; we were partners in the hay business. We told them at bank if they would continue to discount our paper as they had done before, we could pay this note. We offered a note that day ; it was discounted. We offered a few more papers and they stopped and wouldn't discount any more ; there was one or two notes discounted after this arrangement was made. Our paper was thrown out."

Defendant gave similar evidence by Richards and Young, the other endorsers; also that the note was business paper.

The defendant asked the court to charge :—

1. That if the jury believe from the evidence that this note was business and not accommodation paper, that after the bank failed to fix the liability of the endorser by protest, it was exclu-

[Uhler *v.* Farmers' National Bank.]

sively the debt of Ferguson the drawer, and there was no liability on the part of Uhler the endorser.

2. That since the passage of the statute of "Frauds and Perjuries," of 1855, no parol agreement to pay a non-protested note, or to waive protest after maturity can be enforced, unless the promissor be the principal debtor, or the principal debt be released in consideration of such promise or waiver.

3. If the jury believe that the agreement in this case consisted of a promise to pay such part of the Ferguson note as should remain unpaid after distribution of Ferguson's assets by his assignee, and that the bank held the note against Ferguson, whose assets were, under the agreement, to be exhausted before recourse was had to the defendant under his promise, then such promise is within the Statute of Frauds and Perjuries, and the plaintiff cannot recover in this action.

4. If the jury believe that the alleged agreement consisted of a promise to pay the Ferguson note, which promise was extorted by a threat, that the parties who were discharged by the laches of the bank should not have their paper discounted unless they paid a note upon which they were not legally liable, the enforcement of such a promise would be contrary to public policy, and the plaintiff could not recover in pursuance of it.

5. If the defendant, at the time of the alleged arrangement, was not in bank on any paper which was dishonored by him, and which, by the then existing rules of the bank, would have excluded him from the privilege of discount, then a promise which had for its consideration the waiver of such rule in his favor would be void for want of consideration.

6. If the jury believe from the evidence that the Ferguson note was discounted for the benefit of the firm of Richards & Young, and that the alleged agreement consisted of a promise of the members of that firm, as such members, to pay the balance of the Ferguson note, then the action should be joint, or be an action against the firm, and a recovery cannot be had in this suit against the defendant individually.

The court (Chapman, P. J.) directed the jury to render a verdict for the plaintiff, if they believed the evidence.

The verdict was for the plaintiffs for $1250.63.

The defendant took a writ of error, and assigned the instruction of the court for error.

*G. Lear* (with whom was *G. Ross*), for plaintiff in error, cited Schaffer *v.* Bank, 9 P. F. Smith 144; Maule *v.* Bucknell, 14 Wright 51; Forth *v.* Stanton, 1 Sanders 211 b, n. 1; Shoemaker *v.* King, 4 Wright 110.

*R. Watson* (with whom was *A. Swain*), for the defendants in

error, cited Young v. Bryan, 6 Wheat. 147 ; Turnbull v. Trout, 1 Hall 336; Barclay v. Weaver, 7 Harris 396 ; Sherer v. Easton Bank, 9 Casey 134 ; Thornton v. Wynn, 12 Wheat. 184 ; Donaldson v. Means, 4 Dal. 109 ; 1 Pars. on Notes and Bills 595, 596 ; Edwards on Notes 650, and cases cited; Ridgway v. Day, 1 Harris 208; Byles on Bills 237 ; Loose v. Loose, 12 Casey 538 ; Malone v. Keener, 8 Wright 107.

The opinion of the court was delivered, March 21st 1870, by

AGNEW, J.—Michael Uhler was the payee and first endorser of the note in suit. His endorsement was a primary though conditional promise to pay the note to the plaintiff. The demand and notice necessary to make his undertaking absolute, were only acts to be done under the promise. The direct character of this liability was not changed by Uhler's promise to continue responsible on his endorsement, if the bank would wait for its dividend of the estate of the drawer, and in the mean time would treat the non-payment of the note as no bar to his obtaining future accommodations. It was still for the same debt to the same creditor, and for the new consideration moving from the creditor to himself. The general rule of banks to refuse accommodations to the parties on protested paper, is one of great utility in enforcing payment ; and its waiver by the bank is an undoubted benefit to a party on the dishonored note. The promise is not within the Statute of Frauds merely on the ground that the debt is also that of another : Malone v. Keener, 8 Wright 107 ; Arnold v. Stedman, 9 Id. 186. Read, J., said, in Malone v. Keener, that the general principle which prevails in all cases under the 4th section of the Statute of Frauds, from which our act is taken, is, that whenever the defendant's promise is in effect to pay his own debt, though that of a third person be incidentally guarantied, it is not necessary it should be in writing. Ample authority is referred to in those cases. The argument of the plaintiff in error admits that the facts were not disputed, but alleges error on the ground that the learned judge treated the case as one of a mere waiver of protest, instead of a new promise to pay, falling within the Statute of Frauds, because not in writing. In strictness of terms a waiver of protest is an agreement made before or at the time of maturity of the note, and a promise to pay made after maturity, notwithstanding there had been no protest, is a new undertaking. But this undertaking is still primary on the part of the defendant, and not a mere or naked promise to pay the debt of another. The endorsement of the defendant was a transfer of title to the note, and a promise to pay it on failure of the drawer to do so, for a consideration proceeding to him from the subsequent endorser, or to the drawer at his request, evidenced by the fact of endorsement. The defendant as endorser is therefore a party to the

[Uhler *v*. Farmers' National Bank.]

debt, conditionally bound for it. His promise to continue his liability to the creditor from whom the consideration had moved to himself or to the drawer at his request, cannot therefore be said to be a new and independent promise within the Statute of Frauds. It is not a *mere* promise to pay the debt of another, having no other foundation than his express agreement to pay it. This distinguishes it clearly from Maule *v*. Bucknell, 14 Wright 39. The endorsement connected the defendant directly with the note and with the holder, and bore on his own interests as a party to it by barring his title to future accommodations from the holder. He stood in privity both with the debt and the creditor, thus making the new consideration a potent element, and his promise to continue liable on his endorsement a primary liability. Maule *v*. Bucknell was the case of a promise by a third and disconnected party to pay the debts of the Eastern Market Company, with which the promissor had no prior connection or privity. It was wholly collateral and independent, and was essentially a new and mere undertaking to pay the debts of another, and on that account was held to be within the Statute of Frauds, notwithstanding the existence of a new consideration. But here the defendant is bound to the note by a ligament he cannot sever—he cannot wipe out his name—his endorsement is there, the channel of the plaintiff's title, and the evidence of his own dishonored credit. When he promised payment, therefore, he did not assume the mere debt of another, but he relieved himself from personal discredit, and reassumed a position he already had sustained to the debt and to the creditor.

But it is now said the judge in the court below ought to have submitted to the jury the question of fact, whether the plaintiff had refused accommodations to the defendant on account of the protested paper. It is a sufficient answer to say that no such question appears to have been made. Not one of the six points of the defendant refers to this question, no such error is assigned, and not a word is said upon it in the printed argument. The defendant had some paper discounted, and some not, but he gave no proof that any was thrown out on account of the protest, while the plaintiff had given evidence by two witnesses that the discounts were not refused on account of the dishonored paper. More than this was not promised by the plaintiff.

It was too late to take advantage of the non-joinder of other parties as defendants. Besides that, the evidence was strongly indicative of individual promises, the several endorsers remaining bound by their endorsements; and not by a joint undertaking.

Upon the whole case finding no error,

The judgment is affirmed.